The United States Court of Appeals for the Federal Circuit is now open and in session. God save the United States and this Honorable Court. Good morning, we'll hear argument first in No. 20-1461, Uttam Galva Steels Limited v. United States. Ms. Drake? Good morning. May it please the Court, this is Elizabeth Drake of Chagrin Associates on behalf of Defendant Intervenor Appellants Steel Dynamics, ArcelorMittal, and United States Steel Corporation. We respectfully request that this Honorable Court reverse the court order. But how are you addressing the argument? Is it, are you addressing the same issue or a different issue? We are addressing the same issue, but we submitted separate briefs, so I will open the argument and then Ms. Thorsen will add to the direct argument when I'm finished. Okay. I think we're going to have to choose one of you to give the reply because I don't think we want to hear two replies. Okay. May I confer with Ms. Thorsen and we will, one of us will do the reply? Yes. Okay. Thank you. May I proceed? Yes. Why don't you reset the clock, please? Okay. Okay. Thank you. Okay. We are ready to proceed. Yes. Thank you. Again, Elizabeth Drake on behalf of Defendant Intervenor Appellant Steel Dynamics, ArcelorMittal, and United States Steel Corporation. We respectfully request that this Honorable Court reverse the court of international trade and reinstate Commerce's original determination. Commerce's original duty drawback adjustment was in accordance with the law and this court's precedent. Commerce's duty... I'm having trouble understanding. If I understand correctly what happened, the first thing is that the rebates, if we can call them that, were allocated among the entire production, both domestic and U.S. imports. And how is that consistent with the statute when the rebates are only given because of exports to the United States? The reason it's consistent, Your Honor, is because the entire purpose of the duty drawback adjustment is to increase export price by the amount of rebates to account for the fact that those import duty costs are actually reflected in normal value. That's what this court found in Sahakai. So the purpose of the adjustment is to correct that imbalance between a normal value that does contain duties and an export price that does not contain duties. But Sahakai doesn't say that you can do anything except take these rebates, which are attributable to U.S. sales, and use them to increase the U.S. price. And I'm just not understanding how the statute or Sahakai allows that. It does... Sahakai, of course, does say that it has to be a corresponding entry on the normal value side, but that's not the approach that Commerce took in the first determination, right? Right. Because Commerce was faced with a situation where the respondent was using both imported and domestic raw materials, and so some were subject to duty and some were not. And there was... Which raw materials were used in exports versus home market sales was not tracked by the respondent. They tracked the amount of the duties paid. They tracked the amount of the duties rebated or exempted, but those inputs were not literally physically tied just to exports. And so the only way for Commerce to determine what duty burden actually existed in normal value was to use a methodology where it assumed that both domestic and imported inputs were used proportionally in product that was sold domestically and in product that was exported. For that reason, they used the denominator of total production to calculate both the sales rate adjustment, that was the upward adjustment to export price, and the cost adjustment, which was confirmed in Sahakai. This is Judge Chen speaking. I just want to confirm, before Commerce begins calculating what a duty drawback adjustment should be for a certain set of imports, it first conducts a two-pronged test to determine whether a duty drawback adjustment should be given at all, right? Correct. And that two-pronged test, Commerce looks into whether there's any link between what's getting exported out from that home country and whether that company was getting certain inputs from a foreign source that would otherwise cause it to have to pay import duties. Is that right? That's correct. And then the next question is, if so, then the amount of that foreign source input that the company received, is it a large enough amount that it would cover the amount of inputs that were required in order for all those exported goods that came here to the United States? Is that right? The link is that the company has to, or the Indian system has to export a sufficient amount to account for the imports that have not been subject to the duty. Right. And that was found to be the case here. Is that right? Commerce did find that the two-pronged test was met, but they did not find that all of those, all imports were necessarily consumed in the production of exports. All that was found was that under the Indian system, you are allowed to import duty-free as long as you export a certain amount. But the country of India, the Indian government gave Uttam Gavel full import duty relief for those raw materials that came in from a foreign source. Is that right? Only to the extent that Uttam Gavel exported a sufficient amount. If you import X duty-free, you're allowed to export Y amount, or if you, excuse me, if you export Y amount, you're allowed to import X duty-free that's not perhaps typically incorporated. Okay. Then just narrowly looking at the relevant statute we have in front of us, 1677 AC1B, why doesn't all of those facts we just agreed on track the statutory language that mandates, at least for the export price side, we give the full upward adjustment of the amount of import duties? Because the amount of the adjustment should only reach whatever amount of duty burden actually exists on normal value. And that amount is unknown. And so because we do not know... I'm sorry. Did you just say normal value? Right. The amount of the increase to export price in Sahakai, the court said the reason we increase export price to what the exempted duties is to reach a fair comparison because we're presuming that the normal value does contain these import duties. But that presumption is not necessarily correct. And that's why Commerce said we need to actually assume that both the imported inputs and the domestic inputs are proportionally consumed in both production for home market and export because we don't know the actual amount of the duties that are reflected in normal value. And if we don't know that, we don't know what export price adjustment actually achieves a fair comparison. I just don't understand what you're saying. I mean, if duty drawback adjustment with respect to the inputs for 100 units and 100 units are exported to the United States, why doesn't the duty drawback attributable to those 100 units increase the U.S. price? Why not? Because that scenario assumes that 100 units were assessed with duties to be used to produce the 100 units sold in the home market. And that assumption doesn't hold when the producer both has domestic inputs that have no duty burden whatsoever and imported inputs, some with a duty burden and some with not. So that assumption is not borne out by the facts of this case. I believe I'm close to out of my time. If the panel has further questions, we'll hear from Ms. Thorson. Thank you. Thank you, Your Honor. Your Honor, may it please the Court, I'm Maureen Thorson of Wiley-Ryan here today on behalf of NUCOR. Congress provided for the statutory drawback adjustment because it understood that foreign drawback programs create differences in tax incidence, making it cheaper to produce and price goods for export than for domestic consumption. Point of the adjustment is to prevent the difference in tax incidence. Okay, but try to address what Judge Chen and I were asking about. In my example, you get the duty drawback for the inputs for 100 units. 100 units are exported to the United States. And so you have to increase the U.S. price by the duty drawback attributable to 100 units. That's the way it seems as though under the statute it ought to be done, and yet Congress didn't do that. So what the Court explained in Sahatai is that the upward adjustment to export prices is made to account for the fact that import duty costs are reflected in normal value, while export price is presumptively duty-exclusive. But given that the statutory goal is to bring export price to the same duty-inclusive basis as normal value, it makes sense for Congress to consider the degree to which import duty costs are reflected in normal value when calculating the sales-side drawback adjustment. And where a respondent uses both imported and domestically sourced inputs, Congress cannot simply assume that the respondent's overall costs or the normal value based on them reflect only materials that were nominally subject to duty. Is your idea that the specific items exported to the United States might have been from domestic rather than foreign inputs, and that's the justification for departing from the previous rule? I'm not saying it's exactly the justification, but it's certainly possible. I would argue that the possibility... No, no, I understand this. What is the theory? Yeah. That the exports to the U.S. might have been made using domestic inputs rather than foreign inputs, and therefore that's the justification for this allocation. Is that it? Well, it's certainly an assumption. Again, I don't know that it's entirely the justification, but the assumption Commerce made... Wait, wait. Yes. Is that part of the justification? Yes, it is part of the justification because Commerce found that Utengolva used both domestic inputs and foreign inputs in their production, and Commerce had no reason to believe that they used only domestic inputs to produce for the domestic market and only imported inputs to produce for the export market. It was a blend. So Commerce said, well, what's the effect of this blended sourcing scenario on your overall cost of production? But the drawback is allowed only with respect to items that are exported to the United States and calculated. You have to show that that's the case. What difference does it make whether the particular units were used domestically or exported when the overall relationship between the duty drawback and the U.S. exports is 100 to 100? I'd say it only matters, Your Honor, inasmuch as the purpose of the drawback adjustment as explained in FAHTA is to ensure that both export price and cost of production are calculated as if the drawback program didn't exist. And so there has to be an inquiry into the amount of duty burden in the cost of production. And in a mixed sourcing scenario, you can't assume that the cost of production only reflects materials that were nominally subject to an import duty. The actual per unit cost of the duty reflected normal value is, in fact, going to be the average duty cost included in the cost of producing the merchandise for both markets, which means that export price should accordingly only be raised in proportion with the amount of dutiful input used in overall production. And I'm cutting into Ms. Drake's rebuttal time, so if you have any questions... Mr. Thorson, I'm sorry. I've just got a quick question here. Okay. Do you have any idea why the United States, during the course of this appeal, never chose to defend this approach that it did in its final determination? Well, they certainly defended it below at the CIT. You know what I'm talking about. I'm talking about this appeal. Oh, okay. Yes, the government's withdrawal of a... But I can tell you that based on what's going on at the Department of Commerce, I have seen no... I haven't seen the Department of Commerce ceasing to use this methodology. So, whatever the Solicitor General's office or the DOJ was...whatever their thoughts were, it doesn't seem to be coming out of any change of heart on the Commerce Department's point of...from the Commerce Department. Okay. We'll give you two minutes to rebuttal. Whichever of you is going to do it. Thank you, Your Honor. I'll be letting Ms. Drake handle that.  We'll hear from Ms. Cuella. Yes. Good morning, Your Honor. This is Diana Cuella on behalf...from Aaron Fox on behalf of Plaintiff's Appellee Utam Galva. The issue before the Court today is the calculation of duty drawback to expert price. Just to be clear, we don't have any issue before us as to the propriety of the second remand determination calculation, right? Because that doesn't affect the dumping duty. That's correct, Your Honor. As calculated in the second remand result, the margin for Utam Galva is de minimis, and that's why we ask that it be affirmed. Okay. So we don't have to get into the question of whether they calculated this correctly in the second remand determination since you're not arguing about the propriety of the normal value adjustment, right? We're not, Your Honor. We're...conceptually, we are not...we don't necessarily agree with Commerce's choice of issue with that part of their calculation. Okay. That is correct. In both the first and the second remand redetermination, the Commerce Department granted Utam Galva the full amount of the duty drawback on export sales, and this was different from the final determination where Commerce calculated an adjustment only for the cost of production essentially based on total duty exemptions and the general... ...divided by total production. And then that imputed duty amount was applied also as the normal value, as the adjustment to U.S. price. And that was what we believed was inconsistent with the statute, and the Court of International Trades also remanded as being inconsistent with the statute. What we heard this morning and from appellant's brief is this notion that duty drawback is somehow conditioned on any findings as to whether home market prices are duty inclusive. And there is no basis in the statute for this notion that import duties embedded in normal value must be equal to the amount of the drawback adjustment on export price. And there are several authorities that indicate that. So first is the statute. 1677A.C.1.B. is not ambiguous. It requires Commerce to increase U.S. price for eligible duty drawback received in the respondent's country in India. And Commerce is directed without exceptions, exemptions, or offsets to increase the export price for the duty drawback exemptions that are earned on the export sales. I'm just trying to understand what the argument is. Apparently part of the argument is that the items exported to the United States might have been made with domestic inputs, which didn't bear the burden of the import duties. I understand that. But you seem to be saying something else. Do you understand that there's some other theory here justifying not applying the full duty drawback to the U.S. price? No, Your Honor. I understand the appellant's argument in the same way, which is they assume that there is some duty exemption that affects normal value in the same way that it affects export price. And we don't believe that is the case. I'm lost. I don't understand what you're talking about. I'm sorry. I understand one theory, but you seem to be talking about something else, about the effect on normal value. I don't get it. No, I was, Your Honor, this is what appellants had argued in their briefs. But going back to the earlier discussion, what UTAM Galva has reported with respect to export price are the duty exemptions at a sale-specific, licensing-specific basis. So essentially, all of this UTAM Galva sales listing, all of its sales to the United States were reported a portion of duty drawback. And that drawback was specifically linked to a license that was related to the importation of the material. That license was also reflected on the export documents going out. So as to the universe of sales that were reported by UTAM Galva in this case, all of these sales were reported as earned duty drawback. And the exact amounts reported of duty drawback on all of these sales were reported to the department and the department verified them. So there is no disconnect. The duty drawback was earned by the sales that were actually reported here. What plaintiffs seem to suggest is that duty drawback is justified. Their suggestion that the duty drawback should be reduced as commerce did in the final determination is justified on the assumption that finished prices are proportionally affected by drawback received on imported inputs. But here, duty drawback benefit can only be received if an equivalent amount of exports occur. So to be clear, there can be no benefit allocated unless there are exports. And in fact, that is a key rationale of commerce's two-pronged test, which UTAM Galva has satisfied. And it follows that commerce should not dilute the duty drawback adjustment to U.S. price over total production when the only way to receive the benefit is to export the finished product. This is Judge Chen speaking. I mean, I understand what the appellant's overall concern is when we're dealing with a situation with a mixed source input where some of the input is coming from within the home country domestically, but then maybe say half of that input is coming from the outside and is getting slapped with an import duty. But of course, if that half that's coming in from the outside is equal to the amount of input you need for your exported goods to the United States, then you get full import duty relief, and you get a duty drawback adjustment. But the problem we have here is that if the other half of that input that's purely domestically sourced is the input that's being used for home market goods that are sold domestically, there's no import duty that's been actually applied to those inputs because they were sourced domestically. Yet the whole assumption for the duty drawback adjustment is that you are getting a corresponding import duty applied to those inputs. And so, therefore, commerce ought to do something to balance this out, just as commerce did in Sahatai. So, if it's not somehow being adjusted within the duty drawback adjustment export price side, then what is it that you think ought to be done in a situation like my hypothetical where the input that was used for the goods that are sold domestically aren't getting any import duties slapped on them? Do you think on the normal value side, we should increase it by the exact same amount that we adjust upwardly on the export side with the duty drawback adjustment? Well, that is what commerce did in the second remand redetermination, and it still resulted in a margin of zero for Utangava. So, we are not taking issue with that. But in terms of Sahatai, so going back to Sahatai, and this is a really critical point, duty drawback on the export price and on the cost of production, these are two separate calculations. And this is how they have been ever since the court decision in Sahatai until the final determination. So, the duty drawback adjustment on the sale side takes the export exemptions and allocates them over the sales of merchandise sold to the United States. On the cost side, in Sahatai, the court agreed with commerce that there was ambiguity in the statute governing calculation of cost of production and agreed with commerce that it could calculate an imputed duty cost. And according to Sahatai, the cost adjustment allocates the total duty exemptions over the total cost of materials. And this method of having two calculations takes into account what appellants are arguing about, any mix of inputs from domestic and foreign inputs. Because when the Sahatai adjustment is added to the cost of production, sales are then tested against this cost of production. So, if there are any home market sales that pass the cost test, it means that such home market sales are adequately priced so that they take into account any duty exemptions. So, essentially, the Sahatai cost of production adjustment is an unavoidable way by which home market prices are being tested against appellant's concern, essentially. So, in addition to that... I'm sorry. Did you... Was that an answer to my hypothetical? Conceptually, I think you can see what the distortion is in my hypothetical where, in the statute, there's an assumption that you're just going to give a full duty drawback adjustment in a situation like in my hypothetical because you're assuming that all of the domestically sold goods are burdened by an import duty. But in my fact pattern, I'm saying, no, that's not true. They haven't been burdened in that way because the input is being sourced domestically. So, conceptually speaking, wouldn't you agree that something has to be done on the normal value side in order to create a fair comparison given what appears the statute mandates to be done on the export price side with a duty drawback adjustment? Can you just say yes or no so I can follow your... So, no. Your Honor, I don't agree that a normal value adjustment is needed. What Commerce has been doing is the SAHA tie adjustment to cost of production. The statute does not contain any assumptions about the composition of home market prices. Nowhere in the statute are home market sales analyzed to see what costs or expenses they include or they reflect. But the statute does authorize home market prices to be tested against the cost of production. Well, you lost me because the statute for duty drawback adjustment is based on an assumption, based on an assumption that for the normal value, the normal value is going to incorporate the import duties that domestic sales are going to be burdened by. And I've created a fact pattern, a hypothetical where that's not true. And so conceptually speaking, assuming that by statute Commerce is mandated to give the full upward adjustment for the drawback of the duty for exported goods, then why wouldn't under this hypothetical of mine you do this exact same thing on the normal value side in order to create a quote-unquote fair comparison as required by the statute? Well, the adjustment to normal value are statutory. The department cannot essentially create a new adjustment to normal value that the statute 1677B does not already allow. What Commerce can do and what SAHA tie has recognized is that Commerce can calculate an adjustment to cost. But an adjustment to cost cannot be calculated in the same way as an adjustment to export price because an adjustment to cost includes production for the home market, production for export sales. So the denominator of that calculation is a larger number, and that would result in diluting the duty drawback adjustment that was earned on export sales. The drawback adjustment can only be earned if they're exports. Let me give you another hypothetical. Suppose that the U.S. importer has two factories in a foreign country, and one factory is produced using domestic inputs and the other factory uses foreign inputs, which are subject to the same duty drawback adjustment. But every single item exported to the United States comes from the factory that produces using domestic inputs. I take it that in your view, the same drawback duty adjustment to U.S. price should be made under those circumstances, even if every single item was produced using domestic inputs. Well, but in that case... Wait, wait, wait. Yes, no. No, Your Honor, because in that case, the company would not be able to demonstrate under the two prongs that it qualifies for duty drawback. Wait, I just don't understand your answer at all. Because the inputs that are subject to the rebates are calculated based on the units exported to the United States, even though it doesn't make any difference that the particular units go domestically, it's still... The duty drawback adjustment is still calculated based entirely on the number of units exported to the United States. But why doesn't the statute under those circumstances require the same duty drawback adjustment as if everything were intermingled? Your Honor, that is because the exports... What UTANGAVA has reported as duty drawback are the benefits that are specific to the exports it made to the United States. You're really confusing me. I thought your theory, and I thought what the Commerce did was to say it doesn't make any difference what inputs were used for the U.S. export items as long as the duty drawback is correlated entirely to U.S. exports. Yes, Your Honor. The duty drawback that was claimed by UTANGAVA was traced to an import license that corresponded to an import... Okay, the same thing is true in my hypothetical. Why isn't Commerce, in my hypothetical, obligated to make the same adjustment to U.S. price? You seem to think maybe they shouldn't. I don't understand that. I don't understand how that's consistent with your overall theory. No, Your Honor. We believe Commerce should make... The duty drawback adjustment is an adjustment to U.S. price. It should be made... In my hypothetical, should the duty drawback adjustment be made to U.S. price the same way that Commerce did it in the second remand determination? Yes or no? Yes, Your Honor. Yes, absolutely. Okay. Commerce's second remand determination takes exactly the duty drawback that was earned and verified on the exported sales to the United States. And that is the correct and full amount of duty drawback. Okay. Unless my colleagues have any further questions, hearing none, we'll hear from Ms. Drake for two minutes. Thank you, Your Honor. The hypotheticals identified by Judge Dyke and Judge Chen are exactly why Commerce adjusted its duty drawback adjustment methodology to account for the mix of domestic and imported inputs. And this is discussed at the bottom of page eight of the issues and decision memorandum, exactly these same hypothetical situations. In the hypothetical identified by Judge Chen, there would be no import duty burden on domestic sales on normal value. And so there would be no reason to adjust export prices upward if they also afford no import duty burden due to the duty drawback system. Under the hypothetical identified by Judge Dyke, if the exports were made all with domestic inputs, the price would not reflect any import duty burden and it would be inappropriate to grant a duty drawback adjustment. But the statute says Commerce must grant a duty drawback adjustment. It does not say how that adjustment may be calculated. And it was within Commerce's discretion to develop a calculation methodology that accounted for the mix of domestic and imported inputs used in the subject merchandise. And their methodology was reasonable because they assumed a proportional consumption of domestic and imported inputs in both the products sold domestically and the products sold for export. And this was a fair assumption to make and resulted in them using the same denominator to calculate the export sales side adjustment that they used to calculate the cost of production adjustment. And that was necessary to achieve a fair comparison. In Nucor's brief on pages 10 to 11, Nucor illustrates how using a different denominator results in an unfair comparison. And therefore, we respectfully request that Commerce's original determination be reinstated as a reasonable way to deal with the problems that this court has identified. Okay. Thank you. Any other questions, unless there are further questions? No. Okay. Hearing none, I will thank all counsel. The case is submitted.